IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2018

FILED
11/01/2018
Clerk of the
Appellate Courts

# RANDALL WALLACE KIDD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lincoln County**
**Nos. 2014-CR-08, 2014-CR-186      Forest A. Durard, Jr., Judge**

_____

## No. M2017-01339-CCA-R3-PC
_____

In 2014, the Petitioner, Randall Wallace Kidd, pleaded guilty to filing a false police report; he later filed a motion to withdraw the guilty plea, which the trial court denied. While released on bond, the Petitioner failed to appear for his sentencing hearing and was indicted and convicted at trial for failure to appear. The trial court imposed a nine-year sentence for the false police report conviction and a consecutive three-year sentence for the failure to appear conviction. In 2016, the Petitioner filed a petition for post-conviction relief, alleging that he had not entered his guilty plea knowingly and voluntarily due to intoxication and that he had received the ineffective assistance of counsel at his guilty plea hearing and at trial. The post-conviction court held a hearing on the petition and denied relief. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

Roger D. Layne, Chattanooga, Tennessee, for the appellant, Randall Wallace Kidd.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert J. Carter, District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

This case arises from the Petitioner's filing a false police report that he had been assaulted and robbed. For this offense, in 2014, a Lincoln County grand jury indicted the

Petitioner for filing a false police report. Following his entry of a guilty plea, the Petitioner was released on bond pending his sentencing hearing and subsequently failed to appear for his sentencing hearing. For this offense, a Lincoln County grand jury indicted him for failure to appear.

## A. Guilty Plea

On October 21, 2014, the Petitioner entered a guilty plea to filing a false police report with an agreed nine-year sentence to be served at 45%. The manner of service was to be determined by the trial court. At the guilty plea hearing, the State recited the following facts as a basis for the trial court's acceptance of the Petitioner's guilty plea:

[T]he State would prove that on July 29th, 2013, [the Petitioner] went to the Fayetteville Police Department and reported to Patrolman Tony Metcalf that on July the 24th, 2013, he had been assaulted and robbed at the Best Western Motel in Fayetteville, Tennessee.

[The Petitioner] stated that on that day, at approximately 3:00 a.m., he and a man by the name of Dane Simmons were traveling through Fayetteville. When they approached the area of the Best Western [Motel], they had a blowout on the truck they were driving.

[The Petitioner] stated that he pulled into the parking area of the motel to change the tire. While in the parking lot, [the Petitioner] stated that he was approached by two black males and a white female.

[The Petitioner] stated that he was . . . hit with a two-by-four, and the three people robbed him of $6000 and his medications.

Patrolman Metcalf went to the Best Western [Motel] and retrieved the video for that time period. After watching the video, he saw no sign of [the Petitioner]. He also saw no sign of anyone matching the description of the suspects that were described.

And Patrolman Metcalf also contacted Mr. Simmons. Mr. Simmons stated that he had not been with [the Petitioner] and he had not been to Fayetteville. So Patrolman Metcalf determined it was a false report.

The trial court conducted a plea colloquy with the Petitioner, who indicated his understanding of the proceedings and his desire to enter the plea. He indicated his satisfaction with his attorney's representation. The trial court made the finding that the

Petitioner was competent to enter the plea. The Petitioner was released on bond pending sentencing. The Petitioner failed to appear at the subsequent sentencing hearing, set for December 2, 2014, and a Lincoln County grand jury indicted him for failure to appear.

## B. Motion to Withdraw Guilty Plea for Filing a False Police Report

On April 5, 2015, the Petitioner filed a motion to withdraw his guilty plea for filing a false report. The trial court ordered that the Petitioner be evaluated by a mental health treatment facility. At the August 18, 2015 hearing on the motion, the following evidence was presented: The Petitioner testified that he did not have a complete recollection of the guilty plea hearing held on October 21, 2014 because of drug use. The trial court stated for the record that it had questioned the Petitioner under oath at his guilty plea hearing about whether the Petitioner was under the influence of drugs or alcohol at the hearing, and the Petitioner had indicated he was not. The Petitioner said he vaguely recalled being arrested after failing to appear at his December 2, 2014 sentencing hearing. While in jail, the Petitioner became sober and realized he did not remember things he had done in the previous year. He indicated that he wished to withdraw his guilty plea because he did not remember being in court during the plea hearing.

On cross-examination, the Petitioner reiterated that he could not remember coming to court to enter a guilty plea. He was "surprised" that he took an oath before testifying that day. He denied remembering whether he was asked about being under the influence of drugs or alcohol and disputed the accuracy of the transcript of the hearing. The Petitioner identified his signature on the petition to enter a plea of guilty. He stated he had no recollection of signing the document or discussing the plea with his attorney. When asked about the line of questioning throughout the plea hearing, the Petitioner stated that he had no recollection of anything that happened or any statements that he made. He stated that because of his drug problem, he did not remember anything until after his arrest in December 2014.

A transcript of the October 21 guilty plea hearing was admitted into the record. Jenna Miller testified that she prepared the presentence report for the Petitioner in anticipation of sentencing for his filing a false report conviction. Ms. Miller met with the Petitioner on October 28, 2014, a week after his plea hearing, while he was released on bond. Their meeting lasted twenty minutes, during which time Ms. Miller filled out a standard questionnaire with the Petitioner. She described him as alert, responsive, and appropriate. The Petitioner indicated to her that he was taking prescription medication at the time.

On cross-examination, Ms. Miller stated that she saw no indication that the Petitioner was "not competent" during their meeting. She also met with him briefly on

October 21, 2014, the day he entered the plea, and, although she could not recall his demeanor specifically, she stated she would have alerted the trial court if she had suspected he was incapacitated or incompetent. Ms. Miller recalled that their meeting was originally scheduled a few days earlier but that the Petitioner contacted her and changed their meeting to October 28, 2014.

The trial court then stated:

How am I to reconcile what I saw on [the day of the plea hearing]? Because I know my policy that if I have the slightest inkling that [a defendant is] under the influence and not understanding me, the proceedings are terminated.

And then we have [Ms. Miller], who apparently met briefly with him, and probably just to set up an appointment, on the day that he entered the plea. And then met with him, within a week of the plea, during the time that he [now] states he was on drugs and has no recollection.

But yet [the Petitioner] still had the presence of mind to call [Ms. Miller] and reschedule the appointment that he must have remembered he agreed to on the 21st of October. So, how am I to reconcile these things?

And when we look at the transcript [from the plea hearing], I mean, is there any place in there, [], that [the Petitioner] did not clearly answer the questions I presented to him?

The trial court referenced a letter from Centerstone, where the Petitioner had been evaluated, and stated that the facility gave him a "clean bill of health." The trial court stated that the letter referenced that an evaluation of the Petitioner did not support a finding of diminished capacity. The trial court went on to state:

If I had thought that [the Petitioner] didn't understand me during that period of time, I would have terminated the proceedings instantly and we would have continued them until a time when he was more coherent.

. . . .

And as is my typical protocol, if I suspect somebody, first, doesn't understand me, I go to even greater lengths to explain the situation to them.

And I have some suspicion that they're on something, whether it's

4

legitimate or illegitimate, drugs, that's causing them to have difficulty with me, I'll stop the proceedings. And I've done that before.

    And I would have no reason not to do that, if I suspected the same thing in [the Petitioner's] case.

    . . . .

    And we've got the testimony of Ms. Miller versus the testimony of the [Petitioner]. And I don't have anything else, other than he says he doesn't remember. I don't have anything in concrete or of substance that says he had such a problem during that period of time that it would cause him to be basically incoherent.

    I mean, he was coherent enough on the 21st to remember that he had an appointment with Ms. Miller a few days later, and he had to call and reschedule that appointment somewhere between the 21st and the 28th of October 2014. So, he must not have been too foggy-headed at that particular time.

    On this basis, the trial court denied the Petitioner's motion to withdraw his guilty plea.

### C. Trial for Failure to Appear Charge

    On October 27, 2015, the Petitioner was tried by a jury on the charge of failure to appear at the December 2014 sentencing hearing. As is relevant to the issue raised by the Petitioner on appeal, during voir dire, a prospective juror indicated that she knew the Petitioner's two sisters very well. The juror stated that she knew "a lot" about the Petitioner's history from his sister. The juror indicated, however, that she could put her personal knowledge aside and would base her verdict solely on what was presented to her at trial. The jury convicted the Petitioner as charged. At the sentencing hearing, the trial court imposed an agreed-upon sentenced of nine years for the false report conviction with a three-year consecutive sentence for the failure to appear conviction. The trial court specifically addressed the provision in the sentencing agreement that dictated that the Petitioner would waive his right to appeal both convictions; the Petitioner affirmed his voluntary waiver of appeal of both convictions.

### D. Post-Conviction Proceedings

    The Petitioner timely filed a petition for post-conviction relief, alleging that he had

received the ineffective assistance of counsel in both the filing a false police report and failure to appear proceedings and that he had entered his guilty plea unknowingly and involuntarily. He alleged that his plea of guilty to filing a false police report was not voluntary because he was not lucid at the plea hearing. He alleged that his attorney at the guilty plea hearing was not familiar with him or his case and should have asked for a continuance at the guilty plea hearing but did not do so because he was not familiar enough with the Petitioner's mental health problems. He alleged that counsel was ineffective for failing to request a mental health evaluation and did not do a reasonable investigation into the Petitioner's mental state. Finally, he alleged that his attorney at the failure to appear trial was deficient for allowing the Petitioner to waive his right to appeal the result of his trial for failure to appear.

At a hearing on the petition for post-conviction relief, the following evidence was presented: Moody Hall testified that he was appointed to represent the Petitioner in the sentencing phase of the Petitioner's conviction for filing a false police report conviction and the failing to appear case. He explained that he "inherited" the filing a false police report case from another attorney after the Petitioner entered his guilty plea but before the Petitioner's trial for the failure to appear charge. Focusing on the failure to appear charge and proceedings, Counsel Hall testified that he met with the Petitioner approximately ten times and spoke to the Petitioner over the telephone almost daily. He agreed that he spent less than twenty-five hours preparing for the Petitioner's trial. Counsel Hall was aware of the Petitioner's prior record and his career offender status. After Counsel Hall was appointed, Centerstone filed its mental health evaluation report that had been requested by the Petitioner's previous counsel.

With regard to the Petitioner's trial for failure to appear held on October 27, 2015, Counsel Hall recalled that the Petitioner insisted on his presenting a diminished capacity approach for his defense. Counsel Hall advised the Petitioner that raising the defense was "fraught with peril," but the Petitioner testified at trial to his diminished mental state in detail. Counsel Hall recommended that the Petitioner not testify during trial and explained the crime of perjury to him. Counsel Hall recalled that a prospective juror stated that she knew the Petitioner. Counsel Hall did not move to strike her from the jury because the Petitioner was adamant that Counsel Hall keep her on the jury. Counsel Hall represented the Petitioner at the subsequent sentencing hearing and reached a sentencing agreement with the State.

Counsel Hall recalled that there was a marked change between the time the Petitioner was arrested and his trial. Counsel Hall stated that when he was first appointed to the Petitioner's case, the Petitioner was "gaunt" with a "zombie-like" appearance and acted "vacant" with "difficulty collecting his thoughts." At his trial, the Petitioner was "articulate, well-spoken, very polite."

Counsel Hall stated he was fearful that the Petitioner would perjure himself on the witness stand because Counsel Hall felt that the Petitioner's story was continually changing and often seemed "tailored to fit the diminished capacity defense."

On cross-examination, Counsel Hall clarified that he was appointed to the case after the Petitioner's previous counsel had to withdraw for professional reasons. Counsel Hall obtained a copy of the previous counsel's file and reviewed it thoroughly. He kept communication open with previous counsel in case Counsel Hall needed to follow up on any issues. Counsel Hall clarified that the mental health evaluation was performed on the Petitioner at the "joint request" of the defense and the State. Counsel Hall stated that he had dealt with the mental health evaluator, Dr. Garrison, in the past and that he was reticent about Dr. Garrison's dependability to testify in favor of diminished capacity because he had given inconsistent testimony on the subject in the past. Counsel Hall explained to the Petitioner that diminished capacity was not a complete defense but merely negated the mental state required for the crime. Despite his reservations, Counsel Hall argued to the jury that the Petitioner was not in a state of mind to have knowingly failed to appear in court but was in a "fugue state" at the time he committed the offense. He also conveyed to the jury that the Petitioner had a long-standing substance abuse problem which, Counsel Hall opined, was what led the jury to deliberate for a surprisingly long time as to whether the Petitioner was in fact guilty of failing to appear.

Counsel Hall made clear to the Petitioner the rights he was waiving on appeal and discussed the guilty plea proceeding with him in depth. He characterized the Petitioner as perfectly lucid and easy to be around. Counsel Hall agreed that the Petitioner received a break in sentencing, considering his exposure as a career offender. Counsel Hall stated that he was able to negotiate a beneficial sentence for the Petitioner.

On redirect-examination, Counsel Hall again recalled his prior experience with Dr. Garrison and that it had not been a good one; essentially, Counsel Hall did not trust him as a witness. In response to questioning by the trial court, Counsel Hall stated that he discussed his reticence about Dr. Garrison with the Petitioner.

Bradley Sherman testified that he initially represented the Petitioner in the filing a false police report case and was subsequently appointed to represent him on the failure to appear case until he asked to be relieved of representation. Counsel Sherman spoke at length with the Petitioner about the false report charge, as well as with the Petitioner's family. The Petitioner was always lucid and coherent. The two men remained in contact after the Petitioner was arrested for failure to appear. Prior to entering the guilty plea for filing a false police report, Counsel Sherman had difficulty contacting the Petitioner but had five to ten conversations with him prior to the Petitioner entering the plea. Counsel

Sherman met with the Petitioner at length on his failure to appear charge while the Petitioner was in jail. Counsel Sherman agreed that, prior to the Petitioner's guilty plea, he had trouble contacting the Petitioner while the Petitioner was released on bond.

Counsel Sherman recalled his discussions with the Petitioner, the State, and the Petitioner's family regarding the Petitioner's option to plead guilty to filing a false police report. The Petitioner's criminal record was extensive and the risk of receiving an in-range sentence following conviction at trial was concerning to all parties. Counsel Sherman recalled the Petitioner's sisters urging him to take the plea deal. The Petitioner wanted a trial and to present an alibi; however his alibi witness had made a statement that he was not with the Petitioner and that the alibi was untrue.

Counsel Sherman recalled that after the Petitioner pleaded guilty and failed to appear at the sentencing hearing, the Petitioner began to discuss his substance abuse and mental health issues. The Petitioner said that he did not feel that he was mentally competent to have entered the guilty plea. Counsel Sherman filed a motion to withdraw the Petitioner's guilty plea, and then the trial court ordered the mental health evaluation from Dr. Garrison at Centerstone.

On cross-examination, Counsel Sherman agreed that he discussed with the Petitioner his history of substance abuse. He recalled the Petitioner's two sisters being involved in the preparation and engaging in discussions with Counsel Sherman about the Petitioner.

Caroline Kidd testified that she was the Petitioner's sister and that he lived with her in 2014 and was doing drugs at that time.

The Petitioner testified that he had completed the sixth grade and began using drugs at the age of sixteen. In 2014, he was prescribed Morphine, Roxicodone, Xanax, Klonopin, and Valium, to be taken daily. He did not take the medications as prescribed and struggled with substance abuse issues. He recalled being indicted for filing a false police report and being represented by Counsel Sherman. He was unable to recall their interactions prior to his entering the guilty plea because of all the prescribed medications he was taking. He could not remember actually entering the plea, and his memory remained unclear until he was arrested in 2015 for his failure to appear charge. The Petitioner said that he detoxed in jail and "got better." He recalled Counsel Sherman coming to visit him in jail and speaking with him about the mental health evaluation. Counsel Sherman subsequently withdrew from representation and Counsel Hall was appointed in his place. Counsel Hall contacted him regarding his failure to appear charge but never gave the Petitioner a chance to discuss the case. Regarding the juror who knew him and his family, the Petitioner stated that he asked Counsel Hall to exclude her from

8

the jury panel.

On cross-examination, the Petitioner agreed that he had not attended high school but did have a GED. He agreed that he had an extensive criminal history and that he had pleaded guilty in the past. He had also represented himself in prior criminal proceedings. The Petitioner conceded that he remembered some parts of the proceedings in his guilty plea in this case and parts of his discussions with his attorneys. The Petitioner stated that he did not remember the jury trial in the failure to appear case.

On redirect-examination, the Petitioner stated that he did not recall testifying on his own behalf at the trial. He had no recollection of the sentencing agreement encompassing both cases. The Petitioner testified that he had been enrolled in drug treatment while incarcerated and was drug free for twenty-two months which made him feel "better."

At the conclusion of the hearing, the post-conviction court issued an order denying the petition. With regard to the voluntariness of the Petitioner's guilty plea, the post-conviction court found:

> A review of the plea acceptance hearing . . . indicates [the] Petitioner answered clearly and directly all questions in a rather detailed plea colloquy. At no time did [the] Petitioner indicate he was having difficulty understanding the proceedings. [The] Petitioner acknowledged that he was entering his plea to avoid worse punishment if he lost at trial.

As to the Petitioner's arguments that he received the ineffective assistance of counsel because Counsel Sherman failed to request a mental health evaluation for the Petitioner and failed to adequately investigate the case, the post-conviction court found:

> It is granted that Dr. Garrison's report did not exist at the time of the plea; however, there is little to no evidence presented to support [the] Petitioner's contention any diminished capacity issues prevented him from knowingly, intelligently and voluntarily entering his plea on the false report or that he would have proceeded to trial had he been aware of it. The transcript of the plea acceptance hearing bears witness to this.

> . . . .

> The post-conviction court is of the opinion based upon the evidence presented counsel was not deficient in his investigation and advice given to [the] Petitioner in the false report matter. [The] Petitioner is a seasoned

9

criminal intimately familiar with the criminal justice system. [The] Petitioner was quite lucid during his plea acceptance hearing being fully advised of the consequences thereof. [The] Petitioner also escaped a greater sentence if convicted as all evidence contained in the presentence report indicates that he would have been a career offender but took a 9 year sentence as a persistent offender and applied for alternative sentencing. Given the probability of conviction in this case and the additional, likely mandatory punishment, the [Petitioner] has not shown he would have taken this matter to trial. These allegations are without merit.

Addressing the Petitioner's arguments that Counsel Hall was ineffective for failing to raise the issue of diminished capacity and for failing to strike the juror having personal knowledge of the Petitioner's family, the post-conviction court stated:

There is no evidence at the [post-conviction hearing] suggesting [Counsel Hall] acted deficiently or that the Petitioner was prejudiced by not presenting any testimony on diminished capacity, beyond that of what the Petitioner alluded to in his testimony at trial. Counsel [Hall] had seen Dr. Garrison's testimony previously which apparently instilled little confidence it would be helpful in defending a client who failed to appear for his sentencing hearing and did not return for an extended period of time. . . . . Counsel [Hall] was not ineffective or deficient for choosing not to use Dr. Garrison.

. . . .

The post-conviction court will accredit the testimony of [Counsel Hall on the issue of the decision not to strike the juror]. There was no reason for [Counsel Hall] not to challenge for cause or preemptively strike [the juror] had [the] Petitioner so desired and, it is just as well, [the] Petitioner may have believed [the juror] would have some bias in his favor since she knew the family. Reasonable tactical decisions of counsel are not subject to "armchair quarterbacking."

As to the Petitioner's argument that Counsel Hall was deficient for failing to appeal his conviction, the post-conviction court found that the plea agreement encompassing both cases included a waiver of the Petitioner's right to appeal, and thus Counsel Hall could not be deemed ineffective for not filing an appeal.

It is from the post-conviction court's judgment that the Petitioner now appeals.

10

## II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because his plea was not knowingly and voluntarily entered. He contends that the evidence established that he was "strung out" on drugs during the plea hearing and that his plea was thus neither knowledgeable nor intelligent. He further contends that Counsel Sherman was ineffective for failing to investigate his case and for failing to request a timely mental health evaluation before his guilty plea hearing, errors which he contends substantially affected the outcome of the proceedings. Finally, he contends that Counsel Hall was ineffective for failing to raise the issue of diminished capacity at his trial, for failing to strike the juror with personal knowledge of the Petitioner, and for failing to appeal the conviction. The State responds that the evidence does not preponderate against the post-convictions court's findings of fact and that the Petitioner's plea was knowingly and voluntarily entered, as evidenced in part by the extensive guilty plea colloquy. The State also responds that the Petitioner did not receive the ineffective assistance of counsel from Counsels Sherman and Hall. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth

Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by

12

demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

## A. Validity of the Petitioner's Guilty Plea

The Petitioner argues that his guilty plea to filing a false police report was not knowingly and voluntarily entered because he was under the influence of drugs at the time of the plea hearing. The post-conviction court, the same court in which the Petitioner entered his guilty plea, stated that it recalled the Petitioner's demeanor on the day of the plea and would have stopped the proceedings if there was any evidence that the Petitioner was under the influence of drugs, as was the court's normal proceeding in the case of the "slightest inkling" that a defendant could not understand or appreciate the proceedings. The post-conviction court found that there was no evidence to support the Petitioner's contention that he had no memory of the plea and therefore entered it involuntarily. The post-conviction court found persuasive Ms. Miller's testimony that she met with the Petitioner on the day of the plea, scheduled a meeting with him that he subsequently rescheduled of his own volition, and then met with him a week later.

13

We conclude that the evidence does not preponderate against the post-conviction court's findings. Counsel Sherman testified that the Petitioner was lucid. The Petitioner's family, who was present at the plea hearing, recalled that the Petitioner had been doing drugs but provided no evidence that he was too drugged to understand the proceedings. The post-conviction court conducted an extensive plea colloquy with the Petitioner, who answered clearly and without indication that he did not understand the proceedings or was too incoherent to participate. As the post-conviction court stated, other than the Petitioner's statement that he had no memory of the proceedings, there is no evidence to indicate that he entered the plea involuntarily and unknowingly. He is not entitled to relief as to this issue.

### B. Counsel Sherman

The Petitioner contends that Counsel Sherman provided the ineffective assistance of counsel because he failed to adequately investigate the Petitioner's case and because he failed to request a mental health evaluation for the Petitioner prior to his entry of a guilty plea. He contends that if Counsel Sherman had properly investigated the Petitioner's case, he would have known of the Petitioner's need for an evaluation. The post-conviction court found that, as the Petitioner did not seemingly demonstrate the need for mental health treatment, Counsel Sherman was not deficient for not requesting an evaluation. The post-conviction court also found that Counsel Sherman adequately represented the Petitioner, engaging in lengthy plea bargaining on his behalf and securing a lesser sentence for him despite his extensive criminal record.

We conclude that the evidence does not preponderate against the post-conviction court's findings. Counsel Sherman testified that he met with the Petitioner, as well as the Petitioner's family, to discuss the Petitioner's case, and as a group they discussed the Petitioner's desire to go to trial and the related risks. Counsel Sherman and the Petitioner met at length to discuss the case and they had a good relationship. Counsel Sherman feared that the Petitioner's exposure at sentencing, if convicted, was great, and thus he actively negotiated a plea agreement to obtain a favorable sentence for the Petitioner. After our review of the evidence, we conclude that the Petitioner has not shown that he received the ineffective assistance of counsel based on Counsel's advice to the Petitioner to plead guilty. The Petitioner was subject to a lengthy sentence if found guilty by a jury and Counsel secured a shorter sentence through a plea agreement with the State. Counsel's representation in this regard was within the range of competence demanded of attorneys in criminal cases.

As to the Petitioner's contention that Counsel Sherman was ineffective for failing to request a mental health evaluation, the evidence presented does not preponderate against the post-conviction court's findings. As it has been determined that there was no

evidence of the Petitioner's need for an evaluation, Counsel Sherman was not deficient for failing to request one. The Petitioner is not entitled to relief on this issue.

### C. Counsel Hall

### i. Diminished Capacity

The Petitioner contends that Counsel Hall was ineffective for failing to raise the issue of diminished capacity during the Petitioner's trial for failure to appear. The post-conviction court found that Counsel Hall made a tactical and reasonable decision not to call Dr. Garrison as a witness to raise the diminished capacity defense because Counsel Hall did not trust Dr. Garrison based on past experience at trial. The evidence presented does not preponderate against the post-conviction court's finding on this issue. Counsel Hall testified that he did not trust Dr. Garrison, especially when it came to presenting a diminished capacity defense, because he had prior experience with Dr. Garrison, who had testified inconsistently about diminished capacity. Counsel Hall did present to the jury the theory that the Petitioner was not capable of forming the state of mind sufficient to satisfy that element of the offense because he was in a drug-induced "fugue" state at the time he failed to appear at the sentencing hearing. This was a tactical decision made by Counsel Hall that we will not second guess at the appellate level.

### ii. Failure to Challenge Juror

The Petitioner contends that Counsel Hall was ineffective for failing use a preemptory challenge against the juror with personal knowledge of the Petitioner. The post-conviction court accredited Counsel Hall's testimony that the Petitioner insisted that the juror not be stricken and that Counsel Hall had no reason to keep her on the jury if the Petitioner had desired her removal. The post-conviction court noted that the Petitioner likely concluded that the juror's positive relationship with the Petitioner's family might weigh in his favor. The evidence does not preponderate against these findings. The evidence was that the juror knew the Petitioner's family and indicated that no part of that relationship would affect her ability to sit as a fair and impartial juror. The juror's friendship with the Petitioner's family members indeed could have weighed in the Petitioner's favor. The Petitioner presented no evidence that his desire for her to be removed from the jury was ignored or disregarded by Counsel Hall, other than his own testimony, and thus, we conclude that Counsel Hall was not ineffective in this regard.

### iii. Failure to Appeal Conviction

The Petitioner contends that Counsel Hall was ineffective for failing to appeal the failure to appear conviction. The post-conviction court found that the plea agreement

15

waived the Petitioner's right to appeal and thus Counsel Hall could not be deemed ineffective in this regard. The evidence does not preponderate against these findings. The plea agreement, encompassing both cases and sentencing the Petitioner to an effective sentence of twelve years, included a waiver of his right to appeal. Counsel Hall had no grounds on which to file an appeal and thus we conclude he was not ineffective in this regard. Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE